UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

_____

GRAIL SEMICONDUCTOR, INC.,

        Plaintiff,

                          CIVIL ACTION NO.

  -v-

ROBERT B. STERN,

        Defendant
_____

**COMPLAINT**

Plaintiff Grail Semiconductor, Inc., for its Complaint as against Defendant Robert B. Stern ("Defendant" or "Stern"), by and through its undersigned counsel, alleges as follows:

**JURISDICTIONAL AND VENUE ALLEGATIONS**

1.    Plaintiff Grail Semiconductor, Inc. ("Company" or "Grail"), is a foreign corporation authorized to do business in the State of Florida with a principal place of business in Naples, Florida.

2.    Defendant is a citizen of the State of California who has transacted business within this District and Division as set forth in greater detail below.

3.    Jurisdiction is proper under 28 U.S.C. §1331 in that Defendant's conduct described herein constitutes a violation of the Securities Act of 1933, 15 U.S.C. §77a, et seq. and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq.

4.    This Court has pendent jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's non-federal claims, which claims are between parties litigating other matters properly before this Court.

5. Pursuant to 28 U.S.C. § 1391(b), venue in this Court is proper in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

6. Defendant is subject to personal jurisdiction in the Southern District of Florida in that he engaged in an act or acts underlying the claims herein in this Complaint within the territorial confines of this District.

### INTRODUCTION

7. Grail is a development stage semiconductor chip designer and "fabless" manufacturer.

8. A fab is a semiconductor manufacturing/fabrication facility, also known as a foundry, and a fabless manufacturer uses the manufacturing facilities of unaffiliated third parties on a contractual fulfillment basis.

9. In January, 2000, Defendant and his first cousin, Donald Stern, founded the Company, then known as NV Memory, Inc., in order to patent, develop, and market chips and products embodying what they considered to be a fundamental breakthrough in semiconductor memory technology.

10. When formed, the initial shareholders of Grail were Donald Stern and Defendant.

11. Upon formation of Grail, Defendant was issued a certificate for 9,693,318 shares of Grail common stock dated February 17, 2000.

### DEFENDANT'S UNLAWFUL SALE, OFFER FOR SALE
### AND ATTEMPTED DISTRIBUTION OF HIS GRAIL SHARES

12. The certificate evidencing Defendant's ownership of his Grail shares bears the following restrictive legends:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") AND ARE "RESTRICTED SECURITIES" AS DEFINED IN RULE 144 PROMULGATED UNDER THE ACT, THE SECURITIES MAY NOT BE SOLD OR OFFERED FOR SALE OR OTHERWISE DISTRIBUTED EXCEPT (I) IN CONJUNCTION WITH AN EFFECTIVE REGISTRATION STATEMENT FOR THE SHARES UNDER THE ACT OR (ii) IN COMPLIANCE WITH RULE 144, OR (iii) PURSUANT TO AN OPINION OF COUNSEL, REASONABLY SATISFACTORY TO THE COMPANY, THAT SUCH REGISTRATION OR COMPLIANCE IS NOT REQUIRED AS TO SUCH SALE, OFFER OR DISTRIBUTION

THE SHARES REPRESENTED BY THIS CERTIFICATE MAY NOT BE SOLD OR OTHERWISE TRANSFERRED UNLESS SUCH SHARES OR SUCH SALE OR OTHER TRANSFER HAS BEEN QUALIFIED IN CALIFORNIA BY THE COMMISSIONER OF CORPORATIONS OR AN OPINION OF COUNSEL FOR THE COMPANY THAT SUCH QUALIFICATION IS NOT REQUIRED UNDER THE CALIFORNIA CORPORATE SECURITIES LAW OF 1968.

13. On Feb. 26, 2000, a stock split of each share of Grail common stock into 1.547458 shares of Common Stock occurred, entitling Defendant to convert his original shares to 15,000,002; however, a new certificate showing his ownership of the increased number of shares was never issued.

14. Defendant's shares of Grail common stock have never been registered under Section 5 of the Securities Act of 1933, 28 U.S.C. § 77e, or the California Corporate Securities Law of 1968, and, therefore, are considered to be "restricted securities."

15. Starting with the inception of the Company until December 20, 2011, when the Board of Directors of Grail removed Defendant from the Board for misconduct as described herein, Stern has been either an officer of the Company, a Board member or both.

16. As a result of Defendant's position as officer, Board Member or both, he was, at all relevant times herein, an "affiliate" of Grail, as that term is defined under Rule 144,

3

promulgated under the Securities Act of 1933 (hereinafter, "Rule 144").

17.     Since October 2006, Defendant has been engaged in the sale, offer for sale and attempted distribution of his Grail shares to members of the public, which sales were described by Defendant in a letter dated October 15, 2011, in which Defendant reported to the Company that he had sold, or attempted to sell or transfer his restricted shares to third parties, forty-four (44) in number, including persons located in Florida, California and New York, as well as persons in both Canada and Israel.

18.     In said letter, Defendant requested that the Company issue certificates for shares to the said third parties.

19.     On March 17, 2007, in response to a request from Defendant as to his ability to sell his shares, the Company advised Stern in writing that his shares were restricted and that the shares could not be sold, offered for sale or distributed without first going through the process to comply with the requirements necessary to remove the restrictive legends accompanying his shares.

20.     Unbeknownst to the Company, as of March 17, 2007, Defendant had already began his efforts to sell his Grail shares to members of the public.

21.     After being informed that any such contemplated sales would be unlawful, unless a proper exemption from registration of his Grail shares was available, Defendant ignored this written advice and direction from the Company and continued to engage in the sale of his shares to members of the public.

22.     Defendant's sale, offer to sell and attempted distribution of his shares were and

are unlawful under Federal Securities Laws in that:

a) There has never been an effective registration statement for Defendant's shares;

b) Defendant has never complied with Rule 144 in connection with his sale, offer or attempted distribution of his shares;

b) As an affiliate under Rule 144, Defendant was required, but failed, to file a Notice of Proposed Sale with the Securities Exchange Commission ("SEC") on Form 144;

c) Grail has never been supplied with an opinion of counsel with respect to any contemplated sale, offer or distribution of Defendant's shares;

d) The proposed transactions violate the limitations on sales contained in Rule 144(e), under which the transactions cannot exceed the greater of one percent of outstanding shares of Grail;

e) In connection with his sale, offer or attempted distribution of his shares, Defendant failed to provide to any of the prospective purchasers with financial disclosures regarding the Company, which disclosures were required to include adequate current information about the issuer of the securities before the sale can be made, such as the type of information which would be included in s registration statement were the shares to be registered; and

f) In connection with his sale, offer or attempted distribution of his shares, Defendant made material representations of fact with respect to the Company's intention to declare dividends in the future, which intention did not exist at the time of the representations, constituting a violation of Rule 10(b)-5 of the Securities Act of 1934.

23.    Defendant's sale and attempted transfer of his Grail shares were and are unlawful

under the California Corporate Securities Law of 1968 in that:

 a) Defendant's shares or the sale of other transfer of his shares have not been qualified in California by the Commissioner of Corporations; and

 b) No opinion of counsel for the Company has been issued that such qualification is not required under the California Corporate Securities Law of 1968.

24. In response to said October 15, 2011 letter, and following an investigation commissioned by the Company, at a Board of Directors meeting held on December 20, 2011, Stern was removed from the Board of Directors of Grail by reason of his misconduct as described herein.

## THE PROMISSORY NOTE

25. By promissory note dated October 31, 2000 (the "Note"), Defendant promised to pay the Company (then known as "NV Memory, Inc."), the sum of $10,340.08.

26. Defendant had defaulted in the payment obligations evidenced by said Note.

27. According to the terms of the Note, Defendant waived presentment, protest and demand.

28. With accrued interest, the sum presently due and payable under the terms of the Note is no less than $59,650.

29. Pursuant to the terms of the Note, Defendant became obligated to reimburse the Company for its costs, attorneys fees and expenses incurred in the event of any legal proceeding to enforce the provisions of the Note.

## COMPANY ADVANCES TO DEFENDANT FOR NON-REIMBURSABLE EXPENSES

30. Periodically, while Defendant was an officer of Grail, the Company advanced Defendant monies for expenses he allegedly incurred in the pursuit of Company business.

31. Those sums, totaling $41,600, were advanced during the following years and in the following amounts: 2008 ($23,000); 2009 ($17,200); and 2010 ($1,400).

32. When requested by the Company to provide expense reports, as required by the Company's by-laws, to justify Defendant's claim for expense reimbursement, Defendant conceded that these alleged expenses were not reimbursable and represented the expenditure of Company funds for Defendant to protect his own interests as a Grail shareholder.

33. Plaintiff is entitled to be re-paid these sums immediately, together with interest thereon at the applicable legal rate of interest.

### ADDITIONAL VIOLATIONS OF DEFENDANT'S FIDUCIARY DUTIES AS OFFICER AND DIRECTOR OF GRAIL

34. While serving as corporate officer and member of the Board of Directors of Grail, Defendant owed a duty of loyalty and fidelity to the Company.

35. By engaging in efforts to unlawfully sell, offer for sale or attempting to transfer his restricted Grail shares, Defendant placed his personal interests ahead of the welfare of the Company, requiring Plaintiff to incur considerable expense to investigate the circumstances surrounding theses transactions.

36. To date, the cost of this investigation and the legal expense reasonably incurred by the Company in that effort has exceeded the sum of $95,000.

37. Defendant's sales efforts as set forth herein have also impaired Plaintiff's ability to raise capital by diverting necessary seed capital from the Company to Defendant to fund his living expenses, thus usurping a corporate opportunity in violation of Defendant's fiduciary duties.

38. Defendant has also converted to his own use Company funds generated by Defendant in the sale of corporate convertible notes, the proceeds of which went to pay Defendant's personal expenses.

39. Defendant also, from time to time, engaged the services of various lawyers and law firms on terms not approved by the Board of Directors of Grail and specifically against the instructions of the Board, causing significant financial harm to the Company.

## COUNT I

### COUNT TO ENJOIN DEFENDANT'S CONTINUED VIOLATION OF FEDERAL AND STATE SECURITIES LAWS

40. Plaintiff repeats and re-alleges the allegations heretofore set forth herein in paragraphs 7 through 24.

41. Defendant's sale, offer or attempted transfer of his Grail shares violates both Federal and State securities laws, in that said shares are restricted shares and not eligible for any exemption from registration under said laws.

42. Defendant has continued to sell, offer or attempt to transfer his Grail shares despite being advised in writing by the Company that such conduct is unlawful.

43. Plaintiff recently prevailed after trial in a breach of contract lawsuit against Mitsubishi Electric & Electronics USA, Inc., receiving a jury award from the California Superior Court, Santa Clara County, of approximately $124,000,000, as a result of which Plaintiff is naturally concerned that Defendant will be emboldened to continue or increase his efforts to sell, offer or attempt to transfer his Grail shares.

44. Unless Defendant is enjoined from such conduct, there is a further risk that Defendant may engage in such continued conduct and members of the public may be thereby harmed.

45. Unless Defendant is enjoined from such conduct, the Company will be irreparably harmed by the prospect of ongoing disputes regarding entitlement to ownership of Defendant's Grail shares and potential litigation to determine ownership rights in Grail.

46. Without injunctive relief from this Court, Plaintiff will be impaired in its ability to raise capital into the future as a result of the uncertainties as the value of the Company's shares and the ownership of Defendant's shares.

WHEREFORE, Plaintiff demand judgment for a permanent injunction, enjoining Defendant from any further efforts to sell, offer or attempt to transfer his Grail shares and for such other and further relief that this Court deems appropriate.

## COUNT II

## DECLARATORY RELIEF

47.     Plaintiff repeats and re-alleges the allegations heretofore set forth herein in paragraphs 7 through 24.

48.     Defendant has requested in writing that the Company issue certificates for shares to forty-four purchasers or prospective transferees of Defendant's Grail shares.

49.     By reason of the fact that there is no basis for the removal of the restrictive legends applicable to Defendant's Grail shares and that the attempted sales or transfers of Defendant's Grail shares are not lawful under the laws of the United States or any State, Plaintiff is not obligated to effect the requested transfers on the books and records of the Company.

50.     Plaintiff requests a judicial declaration that the attempted sales or transfers of Defendant's Grail shares are ineffective and violative of the restrictions imposed on the sale or transfer of such shares.

51.     Plaintiff requests a judicial declaration that it is under no obligation to effect a transfer of Defendant's Grail shares on the Company's books and records and under no obligation to issue certificates for shares to any of the prospective purchasers or transferees identified by Defendant.

## COUNT III

## BREACH OF FIDUCIARY DUTY

52. Plaintiff repeats and re-alleges the allegations heretofore set forth herein in paragraphs 7 through 24 and 31 through 39.

53. As an officer and director of Grail, Defendant assumed a fiduciary duty to the Company whereby he was prohibited from acting in a manner conflicting with the duties he owed the Company.

54. By engaging in the private sale or attempted sale of his Grail shares, Defendant violated his fiduciary duties to the Company by:

a) raising capital for his own personal use which could have been available to the Company under a proper securities exemption;

b) disclosing to third parties proprietary information regarding the Company not available to the public and without the consent of the Company's board of directors;

c) engaging in conduct described herein which conduct caused the Company to engage in a lengthy and costly investigation into Defendant's activities;

d) taking advances from the Company without the permission of the Board of Directors which advances were not reimbursable expenses under the Company's By-Laws.

55. As a result of the foregoing breach of fiduciary duty, Plaintiff has incurred expenses, lost revenues and has been damaged in an amount to be determined upon further investigation and discovery in this case.

WHEREFORE, Plaintiffs demand judgment for damages, interest, prejudgment interest, attorneys' fees and costs, and for such other and further relief that this Court deems appropriate.

## COUNT IV

## ACCOUNTING

56. Plaintiff repeats and re-alleges the allegations heretofore set forth herein in paragraphs 7 through 24, 31 through 39 and 53 through 55.

57. Plaintiff demands an accounting from Defendant as to his use of corporate funds, use of corporate opportunities and his actions as officer and director of Grail.

WHEREFORE, Plaintiffs demand judgment requiring Defendant to account for his use of corporate funds, use of corporate opportunities and his actions as officer and director of Grail and for such other and further relief that this Court deems appropriate, including an award for such sums of money which an accounting shows as due and owing to the Company.

## COUNT V

## SUMS DUE UNDER THE TERMS OF THE NOTE

58. Plaintiff repeats and re-alleges the allegations heretofore set forth herein in paragraphs 25 through 29.

59. Under the terms of the Note, Defendant owes Plaintiff the sum of $59,650, plus applicable costs, expenses and attorneys fees.

WHEREFORE, Plaintiffs demand judgment for damages, interest, prejudgment interest, attorneys' fees and costs, and for such other and further relief that this Court deems appropriate.

# COUNT VI

## UN-REIMBURSABLE EXPENSE ADVANCES

60. Plaintiff repeats and re-alleges the allegations heretofore set forth herein in paragraphs 30 through 33.

61. Defendant has admitted that the advances he withdrew from the Company while he was an officer and director of Grail are not reimbursable to him for expenses incurred in connection with the business activities of the Company.

62. Despite the foregoing, Defendant has not returned to the Company the sums of money advanced to him.

63. By reason of the foregoing, Defendant owes Plaintiff the sum of $41,600, plus interest thereon at the legal rate of interest.

WHEREFORE, Plaintiffs demand judgment for damages, interest, prejudgment interest, attorneys' fees and costs, and for such other and further relief that this Court deems appropriate.

DATED: May 22, 2012

Respectfully Submitted:

S/   Robert J. Pearl
FLA. BAR NO. 255297
Attorneys for Plaintiff
The Pearl Law Firm, P.A.
7400 Tamiami Trail North
Naples, FL 34108
(239) 653-9330
(239) 653-9377 (fax)
robert@investorattorneys.com